[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband was married to the defendant wife at Needham, Massachusetts, on July 23, 1961. Her birth name was Martha Jeppesen.
Four children, all of them issue of the marriage, were born to the wife. All of the children have reached their majority.
It is the first marriage for both of the parties.
The wife has resided continuously in the State of Connecticut for at least one year prior to the breakdown of the marriage.
This is a thirty-three (33) year marriage. Both of the parties are fifty-five (55) years of age, and apparently both are in good health. The defendant failed to provide the court with any objective evidence of any illness.
The plaintiff is a teacher with a master's degree. The defendant has a Bachelor of Arts degree from Smith College. She is presently a music director and free-lances at country clubs. She has shown a dramatic decline in her income since 1989 when she grossed slightly in excess of $15,000. Her present financial affidavit shows a weekly gross of about $160. Her testimony, however, indicated that she earned $2,300 in December. The court finds that she certainly has the capacity to earn considerably more than what is reflected on her financial affidavit.
The plaintiff earns about $62,000 per year from teaching and summer employment. This figure is not seriously in dispute.
A considerable period of time was expended on the difference between Plan "C" and Plan "N" of the plaintiff's pension. Michael Callahan testified as to the present value of the pension. A Mr. Sudal testified as to the election which must be made by the plaintiff. The plaintiff argues that selection of Plan "C" is neither in his best interest or in his wife's best interest. He argues that election at age sixty (60) or at age sixty-five (65) would drastically reduce his benefits which would be available if he were permitted to elect Plan "N." There is no question that Plan "C" offers CT Page 3480 the best long term protection for the wife. In her brief, the attorney for the plaintiff argues that Plan "C" makes sense only if plaintiff retires at age sixty (60) and dies fairly early into his retirement years and no life insurance exists. As an alternative, she offers Plan "N" with a decreasing term life policy beginning at $200,000 at age sixty-five (65). The court finds this an acceptable compromise.
The defendant requests that the court also award to her all of the right, title and interest in the marital home and, further, that the plaintiff pay the second mortgage. The plaintiff urges that the court order the parties to continue to live together and order an immediate sale of the premises with a 50-50 net distribution of the net proceeds of sale. The court does not agree that it should order the parties to live together or leave the issuance of occupancy unanswered. To the extent possible, all aspects of ownership and possession of the properties should be addressed.
The court finds that the approximate fair market of the real estate is $205,000 with an equity of $185,000.
The court need not dwell on the testimony relative to the breakdown of the marriage. Suffice it to say that both of the parties "strayed" and these liaisons placed a strain on the relationship. The court feels that both parties are equally at fault and that the "fault" factor plays little, if any, part in the court's determination of this matter.
Having considered all of the testimony and the provisions of Connecticut General Statutes, Secs. 46b-81 and 46b-82, the court further finds and orders as follows:
1. The marriage has broken down irretrievably, there is no prospect for any reconciliation and a decree of dissolution may enter.
2. The husband shall pay to the wife the sum of $1,200 per month as periodic alimony. The court predicated this alimony on the wife's ability to earn $15,000 per year and not on her reported income.
Alimony shall be paid until the happening of the first of the following events:
a) death of either party;
b) remarriage by the wife;
c) cohabitation by the wife; CT Page 3481
 d) when the wife begins to receive her portion of the husband's retirement benefits as later ordered.
Alimony shall be non-modifiable as to term.
3. The court assigns to the wife 40 percent of Plan "N" of the husband's retirement plan. The court has, simultaneously with this memorandum of decision, executed a QDRO in order to effect this purpose. A copy of the QDRO is attached herewith as Exhibit A.
4. The husband shall maintain a $200,000 life insurance policy naming the wife as beneficiary until he attains age sixty-five (65). This shall be reduced to $175,000 until he reaches age seventy-five (75) and then there shall be an annual reduction of $10,000 per year until age ninety (90).
5. By judicial decree, the premises located at 81 Stepney Road, Redding, Connecticut, are assigned to the wife. The husband shall vacate the marital premises within thirty (30) days.
The wife shall execute and deliver to the husband a mortgage note and deed in the amount of $50,000 which shall be paid to him on or before April 1, 1996. The wife shall be responsible for the payment of the two mortgages, insurance, taxes and all other expenses attendant to the ownership of said premises, and she shall hold the husband harmless and indemnify him from any and all claims.
6. All of the personal property presently owned by the parties have been or will be divided by agreement of the parties with the exception of a snow thrower, lawn mower, stain sprayer, a table and several ladders which the court orders shall be the property of the wife.
7. Each party is to keep his or her own I.R.A.
8. Except as otherwise provided, each of the parties shall pay for his or her own liabilities. However, the MBNA master card debt shall be equally divided.
9. The husband shall, within sixty (60) days, pay to the wife the sum of $1,500 as an allowance to prosecute.
10. Plaintiff's counsel shall prepare the judgment file.
Mihalakos, J. CT Page 3482